## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBRA ANN ZITO | : | CIVIL ACTION |
| | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | NO. 16-2761 |
| | : | |
| APEX ASSET MANAGEMENT, LLC, | : | |
| and JOHN KLINE | : | |
| | : | |
| **Defendants** | : | |

## M E M O R A N D U M

**STENGEL, J.**                                                                                    **March 31, 2017**

Debra Ann Zito brought this action against her former employer alleging claims under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* (the "ADEA"), the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq*, (the "ADA")*,* and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951 *et seq.* (the "PHRA").  She alleges that the defendant, Apex Asset Management, LLC, terminated her because of both her visual impairment and her age.  The defendants filed a motion for judgment on the pleadings, arguing that the plaintiff did not administratively exhaust her claims and that the claims are untimely.  For the following reasons, the motion is granted in part and denied in part.[1]

### I.    BACKGROUND

Ms. Zito first worked as a collector at Apex from December 2013 until she left on her own accord in April 2007.  (Compl. ¶ 9.)  Ms. Zito was rehired to the same position on May 9, 2009 and was promoted to collections supervisor in 2010.  (*Id.*)  Ms. Zito held this position until

---

[1] The plaintiff concedes dismissal of the ADA and ADEA claims against John Kline in counts one and two, the FMLA claim against both defendants in count three, and the state law wrongful termination claim against both defendants in count five.  I will therefore grant the defendants' motion as to these claims, and they are dismissed.

her termination on August 16, 2013.  (*Id.*)  Ms. Zito was never subject to discipline under Apex's progressive discipline policy and was never "written up" or disciplined, formally or informally, during her time at Apex.  (*Id.* ¶ 25.)

At the time she was fired, Ms. Zito was over the age of forty, blind in her right eye, and suffering rapid loss of vision in her left eye (which ultimately left her blind).  (*Id.* ¶¶ 10–11.) Ms. Zito alleges that Apex was aware of her vision impairment prior to her termination because she discussed her deteriorating vision with Apex's President, John Kline.  (*Id.* ¶ 14.)  Mr. Kline knew of Ms. Zito's treatment and approved several days off of work so Ms. Zito could visit doctors to treat her vision issues.  (*Id.*)  Mr. Kline assigned some of Ms. Zito's job duties to another non-disabled and younger employee, Amber Olweiler, around the time that Ms. Zito's loss of vision was accelerating.  (*Id.* ¶ 17.)

Ms. Zito alleges that Mr. Kline notified her in person on August 16, 2013 that he was terminating her because Apex was downsizing and/or restructuring.  (*Id.* ¶ 18.)  Mr. Kline denied Ms. Zito's offer to accept a demotion.  (*Id.*)  Mr. Kline told her that he intended to resign from Apex and that he would also terminate Ms. Olweiler's employment as part of Apex's downsizing.  (*Id.* ¶ 19.)  Ms. Zito alleges that these statements were pretext for terminating her based on her age and disability.  (*Id.* ¶ 24.)  In support, she alleges that Mr. Kline never actually resigned and that Ms. Olweiler was not only not terminated, but was actually promoted to a supervisory position similar to Ms. Zito's position.  (*Id.* ¶ 20.)  Ms. Zito asserts that Apex did not terminate any non-disabled supervisory employees or supervisory employees under the age of forty because of the downsizing.  (*Id.* ¶¶ 21–22.)  In addition to promoting Ms. Olweiler, Apex promoted multiple non-disabled employees under the age of forty to supervisory positions.  (*Id.* ¶ 20.)

After receiving a right to sue letter, Ms. Zito filed a complaint alleging disability discrimination under the ADEA, ADA, and PHRA seeking $150,000 in compensatory damages and $75,000 in punitive damages.  (*Id.* ¶¶ 6, 34–36, 43–45, 53–55.)  Apex filed a motion for judgment on the pleadings, arguing that her claims are time-barred because she failed to exhaust her administrative remedies.  (Defs.' Mem. Supp. Mot. Judg. Pleadings 7.)

## II.   STANDARD OF REVIEW

Under Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  While motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6) must be brought before, and in lieu of, filing answers, a Rule 12(c) motion is appropriate after the defendants have answered the complaint.  *Id.*  The difference between Rules 12(b)(6) and 12(c), however, is purely procedural and there is "no material difference in the applicable legal standards."  *Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004).  Accordingly, the Court turns to Rule 12(b)(6) jurisprudence for further guidance on the appropriate standard of review.

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); *see also Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555.  Subsequently, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court defined a two-pronged approach to a court's review of a motion to dismiss.  "First, the tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.  Thus, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.

Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. *Id.*; *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 232–34 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level.'" (quoting *Twombly*, 550 U.S. at 555)).

The basic tenets of the Rule 12(b)(6) standard of review have remained static.  *Spence v. Brownsville Area Sch. Dist.*, No. Civ.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008).  The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. *Phillips*, 515 F.3d at 233.  Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff."  *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).  Finally, the court must "determine whether, under any

reasonable reading of the complaint, the plaintiff may be entitled to relief." *Pinkerton v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III.   DISCUSSION

Apex argues that it is entitled to judgment on the pleadings because the plaintiff's ADEA, ADA, and PHRA claims are time-barred since her formal charge was filed more than 300 days after her termination.  (Defs.' Mem. Supp. Mot. Judg. Pleadings 8.)  The plaintiff argues that her claims are timely because the EEOC intake questionnaire she filed constituted a charge of discrimination and because equitable tolling applies to her claims.  (Pl.'s Resp. Opp'n 5–6.)

A plaintiff must exhaust his or her administrative remedies before suing for violations of the ADEA, ADA, or PHRA.  *See, e.g.*, *Hildebrand v. Allegheny Cnty.*, 757 F.3d 99, 109 (3d Cir. 2014); *Churchill v. Star Enters.*, 183 F.3d 184, 191 (3d Cir. 1999).  The ADEA requires an EEOC filing within 300 days of the alleged discriminatory conduct.  29 U.S.C.S. § 626(d)(1)(B). A plaintiff bringing a charge under the ADA must fulfill the procedural requirements of Title VII of the Civil Rights Act of 1964 ("Title VII").  42 U.S.C. § 12117(a).  Title VII, and therefore the ADA, requires a plaintiff to exhaust his or her administrative remedies by filing a claim with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged discriminatory action.  42 U.S.C.S. 2000e-5(e)(1).  The PHRA requires the plaintiff to file a complaint with the Pennsylvania Human Relations Commission ("PHRC") within 180 days of the alleged discriminatory conduct.  43 Pa. C.S. § 959(h).  The court can apply the equitable tolling doctrine to stop "the statute of limitations from running when an accrual date for an Equal Employment Opportunity Commission charge has already passed."  *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 384 (3d Cir. 2007).

**A.  Plaintiff's filing of an EEOC Intake Questionnaire exhausted her administrative remedies for the ADA, ADEA, and PHRA claims.**

The United States Supreme Court has stated that an EEOC intake questionnaire can be a charge of discrimination under the ADA if the filing meets certain requirements.  *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008).  One requirement is that the charge includes certain information such as the employee's and employer's names, addresses, and phone numbers and an allegation that the employee was the victim of age discrimination.  *See id*. at 404.  Another requirement is that the filing "must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee."  *Id.* at 402.

 The EEOC revised its intake questionnaire following *Holowecki* to include a box ("Box 2") that a plaintiff may check to indicate his or her intention to make a charge of discrimination.  *Hildebrand*, 757 F.3d at 113.  Since that revision, the Third Circuit has held that an EEOC intake questionnaire with Box 2 checked constitutes a formal charge with the EEOC of an employer's alleged ADEA violation.  *Id*.  The Third Circuit stated that an employee who checks Box 2 "unquestionably files a charge of discrimination."  *Id.*

Courts in this district have also found that the revised EEOC intake questionnaire constitutes a formal charge with the EEOC, and thus an exhaustion of administrative remedies, for claims under Title VII.  *Tinneny v. Weilbacher*, No. Civ.A. 15-753, 2017 WL 220331, at *4–*5 (E.D. Pa. Jan. 19, 2017); *see also Yarnall v. Philadelphia Sch. Dist.*, 57 F. Supp. 3d 410, 427 (E.D. Pa. 2014) (finding that the EEOC intake questionnaires submitted by the plaintiffs satisfied the applicable requirements for filing a charge of discrimination with the EEOC).  In *Tinneny*, the plaintiff filed a Title VII gender discrimination claim against his employer and submitted an EEOC intake questionnaire.  *Id.* at *4. The plaintiff checked Box 2 on the EEOC intake

questionnaire, indicating that he wished to file a charge of discrimination and authorized the EEOC to look into the discrimination.  *Id.* at *4–*5.  The plaintiff also generally stated the grounds for his charge.  *Id.*  The court found this filing sufficient to exhaust the administrative remedies of Title VII.  *Id*. at *5 (citing *Hildebrand*, 757 F.3d at 113).

Applying these principles, the plaintiff's EEOC intake questionnaire constitutes an administrative charge for purpose of her ADEA, ADA, and PHRA claims.  Plaintiff's lawyer submitted the EEOC intake questionnaire on her behalf, accompanied by a detailed cover letter describing the alleged discrimination and requesting dual-filing with the PHRC.  (Pl.'s Resp. Opp'n Ex. A.)  The EEOC intake questionnaire was entirely completed with the plaintiff's and the defendants' names and addresses, as well as statements regarding the basis for her allegations.  (Pl.'s Resp. Opp'n Ex. A.)  The plaintiff checked Box 2 indicating that she wanted to file a charge and have the EEOC investigate the discrimination.  (Pl.'s Resp. Opp'n Ex. A.) For these reasons, the plaintiff's March 11, 2014 filing was an administrative charge.

**B.  Plaintiff may rely on equitable tolling.**

Equitable tolling can excuse a plaintiff's failure to file an administrative charge within the statute of limitations "when it appears that (1) the defendant actively misled the plaintiff respecting the reason for the plaintiff's discharge, and (2) this deception caused the plaintiff's non-compliance with the limitations provision."  *Ruehl*, 500 F.3d at 384 (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994)).  A court can recognize when a defendant's acts or omissions induced the plaintiff to forgo timely filing.  *Oshiver*, 38 F.3d at 1387.  In such instances, the statute of limitations is tolled until the date that the facts supporting a plaintiff's claim become apparent or should become apparent to the reasonably prudent person. *Id.* at 1389.

In this case, the plaintiff has pleaded sufficient facts to rely on the doctrine of equitable tolling. She alleged that Mr. Kline provided her with false information at her termination when he told her that Apex was downsizing, that he intended to resign, and that he was terminating another employee. (Compl. ¶ 19.) She subsequently discovered on September 25, 2013 that those assertions were pretext for discrimination. (Pl.'s Resp. Opp'n 6.) She alleges that Mr. Kline did not resign, no supervisory employees under the age of forty resigned, and the employee that Mr. Kline said he was terminating was actually promoted, along with two other young and non-disabled employees. (Compl. ¶¶ 20, 22–23.) These allegations are sufficient to toll the statute of limitations to the date when she discovered that she may have claims—September 25, 2013.

### C. Plaintiff timely exhausted her administrative requirements.

Plaintiff filed her administrative charge with the EEOC and the PHRC on March 11, 2014, 169 days after September 25, 2013, which was the date on which she became aware of the facts supporting her claims. Thus, the ADEA, ADA, and PHRA claims are timely and her administrative remedies were exhausted. Accordingly, the defendants' motion for judgment on the pleadings with respect to the claims against Apex in counts one and two, and the claims against Apex and John Kline in count four, is denied.

## IV.   CONCLUSION

In light of the foregoing, the defendants' motion for judgment on the pleadings is granted with respect to the claims against John Kline in counts one and two, as well as the claims against both defendants in counts three and five. The motion is denied with respect to the claims against Apex in counts one and two, as well as the claims against both defendants in count four.

An appropriate order follows.